(No. 4490—

J. W. CURRAN AND WORLD FIRE AND MARINE INSURANCE COMPANY, A CORPORATION, Claimants, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed June 11, 1952.*

MOREY C. PIRES, Attorney for Claimants.

IVAN A. ELLIOTT, Attorney General; WILLIAM H. SUMPTER, Assistant Attorney General, for Respondent.

LANSDEN, J.

These claims are based upon Sec. 372a, Chap. 23, Ill. Rev. Stat., 1951 entitled "An Act concerning damages caused by escaped inmates of charitable, penal and reformatory institutions over which the State has control", reading as follows:

"372a. Claims for damages caused by escaped inmates of charitable, penal and reformatory institutions.] § 1. Whenever a claim is filed with the Department of Public Welfare or the Department of Public Safety for payment·of damages to property, or for damages resulting from property being stolen, heretofore or hereafter caused by an inmate who has escaped from a charitable, penal or reformatory institution over which the State of Illinois has control while he was at liberty after his escape, the Department of Public Welfare or the Department of Public Safety, as the case may be, shall conduct an investigation to determine the cause, nature and extent of the damages inflicted, and if it be found after investigation that the damage was caused by one who had been an inmate of such institution and had escaped, the said Department may recommend to the Court of Claims that an

award be made to the injured party, and the Court of Claims shall have power to hear and determine such claims. As amended by act approved Aug. 2, 1951. L. 1951, p. 1892, S.B. No. 535."

The above quoted statute and Section 8 A of the Act creating the Court of Claims, Ill. Rev. Stat., 1951, Chap. 37, Sec. 439.8, specifically confer jurisdiction upon this Court to determine the claims herein involved.

This Court has made awards under the statute prior to its amendment in 1951 when it related only to damages done by escaped inmates of charitable institutions, *Carls* vs. *State*, 15 C.C.R. 26-29; *Johnson* vs. *State*, 15 C.C.R. 126; *Hassell* vs. *State*, 18 C.C.R. 199.

The record in this case consists of the complaint, Departmental Report, transcript of evidence, commissioner's report, and stipulation waiving briefs of both parties, an examination of which discloses the following:

On October 9, 1951, one Stanley Pastewski, then an inmate of Dixon State Hospital, Dixon, Illinois, escaped from the institution, and wandered into an area nearby, known as Riverview, Assembly Park, Dixon, Illinois.

Although he did not own the land upon which it was located, claimant, J. W. Curran, owned a four-room frame dwelling in Assembly Park, upon which claimant, World Fire and Marine Insurance Company, had issued a fire insurance policy in the amount of $500.00.

Pastewski entered the dwelling, found a match and some paper, started a fire upstairs, and then carried some burning paper downstairs, where he ignited an old piece of furniture and more paper. He then went outside, sidled off, watched the fire trucks arrive, and the firemen put out the blaze, and then strolled on

until apprehended, and returned to the institution. Pastewski "liked to see" fires.

Claimant, Curran, promptly made claim to the Department of Public Welfare. An investigation was conducted, and the liability of respondent established. Said Department has recommended to this Court that the extent of claimant's damages be determined.

As to claimant, World Fire and Marine Insurance Company, an award will be entered for $500.00, since the company paid claimant, Curran, the full amount of its fire policy, and Curran executed a subrogation receipt to such company for such amount.

Manifestly, claimant, Curran, is also entitled to an award, but from the evidence and the law we must determine the amount thereof. It should be borne in mind that there is in this case no question of damages to land, because Curran did not own the land upon which the house rested.

In 1945 Curran bought the house for $1,000.00, when it was at least 20 years old. During the next 6 years, he expended $500.00 to $600.00 for improvements, consisting of wiring, plumbing, roofing, papering, and exterior and interior painting. From 1945 to October, 1951, there was a general appreciation in value of all buildings, which were properly maintained, as was Curran's house.

Curran paid $56.00 per year as rent for land upon which the house was located, and had received $25.00 per month in rent until September, 1951, when the house was vacated, because Curran was going to move it approximately 3 miles to another location, since the landowner needed the lot for a subdivision development.

Although Curran sought to establish a value considerably higher, the insurance man, who wrote the

$500.00 fire policy, testified he would have insured the structure for $2,000.00. Pictures introduced in evidence showed the size, type of construction and general condition of the house.

We, therefore, conclude that just before the fire Curran's house was worth $2,000.00.

Evidence was also introduced that it would cost $3,285.00 to restore the house to its former condition.

Although Curran is entitled to the benefit of the rule of law "that that valuation should be adopted, which will be most beneficial to the injured party, as he is entitled to the benefit of his premises intact", *Richards* vs. *Gundlach*, 245 Ill. App. 264, 267, no measure of damages can ever be applied, which would give anyone a profit from a casualty.

It is, of course, proper to consider the cost of restoration, *Fitz Simons* vs. *Braun*, 199 Ill. 390, but when the cost of restoration exceeds the value of the property, the value of the property becomes the ceiling on the amount of damages recoverable, especially when the building is old. *McCormick on Damages (Hornbook Series)* 1935, Sec. 126, pp. 482-484; Cf. *Chicago & N.W. Ry. Co.* vs. *Davis*, 78 Ill. App. 58. Certain Illinois cases indicate that this is the rule to apply in this case, for they permit the measure of damages to be the cost of restoration, if such can be done readily and at a relatively modest expense. *Clark* vs. *Public Service Co.*, 278 Ill. App. 426, 447, and cases cited therein; *Cooper* vs. *Kankakee Elec. Light Co.*, 164 Ill. App. 581, 586.

The question of the value of the salvage is somewhat troublesome. The Departmental Report fixes it at $500.00. Curran, and others, testified that he had advertised the salvage for sale at $250.00, and found no bidders; and that the labor to dismantle the re-

mainder of the house would exceed the value of the salvage. Commissioner Anderson, who viewed the damaged house, and whose complete description of the structure has been of great value in the preparation of this opinion, expresses an opinion that the salvage is worth $300.00. The pictures in evidence corroborate Commissioner Anderson, and we, therefore, conclude that the salvage should be valued at Commissioner Anderson's figure.

Curran has, therefore, been damaged to the extent of $1,200.00, which is the value of the building, $2,000.00 less insurance received of $500.00, and salvage worth $300.00.

An award is, therefore, entered in favor of claimant, J. W. Curran, for $1,200.00.

An award is also entered in favor of claimant, World Fire and Marine Insurance Company, for $500.00.